## Case No. 7,686.

### KEMP v. KENNEDY.

[Pet. C. C. 30.] [1]

Circuit Court, D. New Jersey. Oct. Term, 1808. [2]

TREASON—JURISDICTION OF STATE COURTS—MARRIED WOMEN—FORFEITURE.

1. The jurisdiction of state courts as to treason, is not limited.

2. Courts of limited jurisdiction, must act within the scope of their authority; and it must appear, on the face of their proceedings, that they did so exercise their authority, or all they do will be coram non judice and void. The legislature which creates such courts, may alter or qualify this principle, and when this is

done, the law creating the exception, is alone to be regarded.

[Cited in Lincoln v. Tower, Case No. 8,355; U. S. v. New Bedford Bridge, Id. 15,867; Waring v. Clarke, 5 How. (46 U. S.) 500.]

[Cited in Wyman v. Campbell, 6 Ala. 219; Silver v. County of Schuylkill, 32 Pa. St. 357.]

3. A feme covert, who, in April, 1776, joined the enemy in company with her husband, committed no offence under the act of the legislature of New Jersey, passed 11th December, 1778, relating to forfeited estates; and voluntarily remaining with the enemy, after the enacting of that law, without aiding them, by council or otherwise, was not an offence against its provisions.

4. If a court, authorised to try and decide on such offences, declares an act to be treason, which by the laws constituting the court is not such, it is error, and its judgment may be reversed by a superior tribunal; but this is not an usurpation of power.

5. The owners of estates, wrongfully forfeited under the act of 11th December, 1778, have no remedy, by ejectment, to recover the property forfeited; but could only proceed by writ of error according to the statute.

6. Quere, if an alien plaintiff can recover in ejectment.

The lessor of the plaintiff, deduced a regular title to the land in question to herself. She was the wife of John T. Kemp, formerly of New York; and it appeared that he and his wife, continued to reside in that province, from a period anterior to 1773, until the evacuation of the city by the British in 1783; when they removed to Great Britain, where the lessor of the plaintiff has always continued to reside. It did not appear that they ever took part with the Americans, in the Revolutionary war, but adhered to their former allegiance. John T. Kemp died in 1792. The title of the defendant, was founded upon an inquisition and judgment rendered in August, 1779, by the inferior court of common pleas for the county of Hunterdon, pronouncing Kemp and his wife to be traitors, within the laws of the state of New Jersey. The land was regularly sold and conveyed, by the commissioners of forfeited lands, to the defendant. The inquisition upon which the judgment was founded finds "that J. T. Kemp and Grace his wife, and C. M'Iver, of the city of New York, are offenders in manner as described in the act of 11th December, 1778," and that they, the said J. T. Kemp and Grace his wife, "did go to the enemy, and took refuge with them some time in April, 1776, and still remain with them." The important parts of the different acts of the state upon this subject, are as follows: The first act, passed on the 4th October, 1776, declares what persons do owe allegiance to the government of New Jersey, and "that every such person, who after the publication of the law, should levy war against the state, within the same, or be adherent to the king of Great Britain, or other enemies of the state, within the same, or to the enemies of the United States, giv-

ing them aid and comfort, or giving them advice or intelligence, or furnishing them with provisions or warlike stores; and thereof shall be provably attainted, of open deed by people of his or her condition; shall be adjudged guilty of high treason, and be punished accordingly, saving the corruption of the blood." The next act, passed on the 20th September, 1777, declares what shall be the punishment of treason. The act of the 18th of April, 1778, declares, that the commissioners of forfeited property, shall return to some justice of the peace of their respective counties, the name and place of the late abode of each person, whose personal property they had seized;[3] on the ground of their being traitors, and obtain a precept for summoning a jury of freeholders of the county, to enquire whether such person is an offender, within the treason law. After notice of the time and place of the meeting of the jurors, the said jurors, in presence of the justice, are to make an inquisition, stating the acts of treason committed by the offenders according to a certain prescribed form. This inquisition is to be returned by the justice, to the next inferior court of common pleas for that county; which is directed to make proclamation, calling upon the person against whom the inquisition is found, or who may be interested, to appear and traverse the same; which if done on the terms prescribed, a trial was to be awarded. If no person appeared, a second proclamation with notice is directed to be given, and another opportunity is offered to the party to appear and traverse. If he then fail, final judgment is to be rendered in favour of the state, and his personal property is then to be sold by the commissioners. The act of 11th December, 1778 (Patt. Laws N. J. p. 40), declares, in the 2d section, that every person an inhabitant of this state, who between the 19th April, 1775, and the 4th October, 1776, aided and assisted the enemy, by joining their armies, or who voluntarily went to, took refuge, or continued with, or endeavoured to continue with the enemy, and aided them by counsel or otherwise, and who had not returned and taken the oath of abjuration and allegiance to the state; to be guilty of high treason; and on conviction by inquisition and final judgment, his whole estate real and personal, is declared to be forfeited, but his person is not to be affected. By the 3d section, the inhabitants of any other of the United States, seized, or possessed of, or entitled, to real or personal property, in the state; convicted in like manner, by inquisition and final judg-

[3] The act of the 5th June, 1779, contained an offer of pardon, to those who had offended against the treason law, on certain conditions; which if not complied with, certain commissioners were to take possession of all their personal property in the state, which is declared to be forfeited on conviction.

ment, of similar acts of treason, are also declared to be guilty of high treason, and their said estates are declared to be forfeited and vested in the state, without further proceedings to be had. The law then goes on to prescribe the form of the proceedings in taking, returning and trying questions, and entering judgment thereon; which are to be the same as under the act of the 18th of April, with some slight alterations in form, not of sufficient importance to be mentioned. The law then directs, how the forfeited estates are to be sold by the commissioners, and the proceeds are to be appropriated to the payment of the debts of the attainted persons. The 11th section declares, that if any process or proceeding, by virtue of which any such sale as aforesaid may be made as aforesaid, shall hereafter be reversed or made void for error, or any other cause whatsoever; such reversal shall not affect or injure, or be of force, or in any otherwise operate, against any bona fide purchaser under this act, but against the state only; and in such case the plaintiff in error, or person injured by the sale, shall apply to the legislature, to be indemnified out of the treasury, to the amount of the purchase money received for the estate.

Messrs. Stockton and Edward Tilghman, for lessor of plaintiff, contended: that the only act to be considered, was that of 11th December, 1778, all the others applying to inhabitants of New Jersey. The question is; is Mrs. Kemp an object of the 3d section of the law, and are the proceedings against her of any validity in point of law? She is not an object of the law, because it is not stated, that she or her husband were inhabitants of another state, or that they were seized, possessed of, or entitled to any estate real or personal in this state, or that they voluntarily went to, or remained with the enemy, or that they aided them by counsel or otherwise. Stating them to be of New Jersey, is not sufficient to give jurisdiction. [Bingham v. Cabot] 3 Dall. [3 U. S.] 382; [Wood v. Wagnon] 2 Cranch [6 U. S.] 1. Indeed, they could not be inhabitants of the United States in April, 1776, when it is found they went to the enemy; because, at that time the states were not united, and they had a right to take their part. Respublica v. Chapman, 1 Dall. [1 U. S.] 53. Although the form of the inquisition is prescribed in the law, and the word "inhabitant" is not inserted in it, still the inquest is to set forth the nature of the offence, and it was of the nature of the offence, to state that they were inhabitants of another state, owned property, and voluntarily joined the enemy. 2 Hawk. P. C. 355; §§ 112, 113; Id. 320; § 57; 2 Burrows, 127. But independent of these objections, the plaintiff being at the time a feme covert, she could not be an object of the law. It was her duty to accompany her husband, and at the time she did so, she violated no law of the state. The word "her" to be found in the different laws may be satisfied by applying it to a single woman; the word "inhabitant" is inapplicable to a feme covert, who, being with her husband, is not an inhabitant. 1 Bl. Comm. 442. A feme covert cannot be guilty of larceny, or even of burglary, in company with her husband, or even of misprision of treason, for receiving her husband he being a traitor. 1 Hawk. P. C. 3; 1 Hale, P. C. 47; Mass. Term R. 347. If these objections, or any of them, are well founded, then the judgment is not merely erroneous, but it is void; because the jurisdiction of the court being special, and limited to certain specified cases of trial, it should appear upon the face of the proceedings, that this was one of those cases or else all is coram non judice and void. 2 Wilson, 382; 6 Mod. 224; 9 Mod. 95; 2 Hawk. P. C. p. 94, § 21; 4 Burrows, 2281, 2244; 1 Burrows, 148; 1 Esp. 178; Cowp. 26, 29; Plow. 390; 3 Co. Inst. 231; 12 Mod. 355; 1 Lev. 160; 2 Black. 1145.

Messrs. Leake and Williamson, for defendant, contended: as to the objection, that Mrs. Kemp was a feme covert, the general words of the law furnish a complete answer. The words are, "every person"—"any inhabitant," and throughout the laws, speak of "him or her," "his or her." This is agreeable to the common law doctrine. A feme covert, guilty of treason, murder or robbery, though in company with her husband, is punishable as a feme sole; and she is even guilty of larceny, committed out of his presence, though by his command. If she consent to his treason, she is guilty of misprision. 1 Hawk. P. C. pp. 11, 12, § 11; 4 Bl. Comm. 29; 1 Hale, P. C. 44, 45, 47, 48; 1 Cruise, Dig. 172. Besides, it does not follow from the finding, that Mrs. Kemp went to the enemy in company with her husband. As to the other objections, they contended: 1st, that this is not the case of a special and limited jurisdiction. The court which gave this judgment, has, in civil cases, a jurisdiction over all persons, and to any amount, except that they cannot try ejectments, or suits for land. Their jurisdiction, in cases of treason, is general under the laws which have been read. But, secondly; the 11th section furnishes a complete bar to this suit. If the plaintiff, having an election to proceed by writ of error or original action, can get out of the provisions of this section, by choosing the latter; the intention of the legislature would be entirely defeated. Besides, if she can recover in this action, it is possible she may get her land back, although the whole proceeds may have been expended in paying her debts; which could not be the case, if she should be compelled to apply to the legislature.

WASHINGTON, Circuit Justice (charging jury). There are two questions which I shall submit to your consideration. First, is the

judgment in this case erroneous, for all or any of the reasons assigned by the plaintiff's counsel? Secondly, if erroneous, can advantage be taken of such errors, in this action?

First. The objections all go to the form of the inquisition, except that which refers to the incapacity of the lessor of the plaintiff, being a married woman, at the time the acts of treason are charged to have been committed. The objections to the form of the inquisition are, that Kemp and his wife are not found to be inhabitants of any one of the United States; or that they owned any real or personal property in the state of New Jersey; or that they voluntarily went to, or remained with, the enemy; or that they aided the enemy by counsel, or in any other manner.

The rules laid down by the plaintiff's counsel are, upon the general principles of law, certainly correct. Courts of limited jurisdiction must not only act within the scope of their authority, but it must appear upon the face of their proceedings that they did so; and if this does not appear, all that they do is coram non judice, and void. But it is competent to the legislature to alter or qualify this principle, as it may think proper; and where the observance of the general principle is thus dispensed with, in a particular case, the law creating the exception is alone to be regarded. It is true, that, in this case, the person contemplated by the third section is an inhabitant of another state, owning property in this; and this would have been a necessary description of Kemp and his wife, if the fourth section, which gives the form of the inquisition, had not dispensed with this necessity. In that part of the prescribed form which mentions the party accused, he is stated to be of ——, or late of ——; and in no part of it, is he stated to own property in the state. In stating the offence, a blank is left in the form; and the jury are required to set forth the time and nature of the offence. It is not true, that the description of the person, is of the nature of the offence; and therefore the omission to set forth, that these persons were inhabitants of some other state, and owned property here; could not, upon a writ of error, have been alleged as ground of reversal.

The other objections are more serious—the going and remaining with the enemy, are essentially parts of the offence, and it should have been stated that this was done voluntarily, for, otherwise, no offence was committed within the law. The going to the enemy, in April 1776, in company with her husband, if this appeared, might not be an offence in the plaintiff; because, as, at that time, it violated no law of the state, she acted lawfully under his control, which was not then subordinate to any superior duty; and therefore it could be fairly said, that, in 1779, that she still remains with the enemy; which is a distinct offence under the previous law of December 1778; but still it was no offence unless she continued voluntarily; and as this is not found, this objection is certainly well founded. The fourth objection is too clear to admit of doubt. The voluntarily remaining with the enemy was no offence under this law, unless the parties aided the enemy by counsel, or otherwise; which not being stated, it does not appear that they were legally convicted. For mere errors, there is no doubt but that this judgment might have been reversed, but then:

Secondly. Can they be taken advantage of in this suit? Can the plaintiff step over the judgment, as if it had never passed, and recover the land which was sold under judgment? It is contended by the plaintiff, that the inquisition is the act of a tribunal, vested only with a limited authority, to inquire into certain specified offences, and that their acts in relation to offences, not of this description, are utterly void. It is more correct to inquire, whether the inferior courts of common pleas possessed this limited jurisdiction? because, if there be error, it is not in the inquisition but in the judgment. We cannot get at the inquisition, but through the judgment. It is this which is "erroneous," or "void," if either term be properly applicable to the case. The question then is, is the judgment of the court of common pleas of Hunterdon, void upon the ground, that it was a court of special and limited jurisdiction? What is the constitution of that court? It seems to be agreed, on all hands, that it is a court of record, possessing, in civil cases, a general jurisdiction to any amount; and over all cases of tort or contract, wherever the cause of action arose, the defendant residing or being served with process within the county. An exception from this general jurisdiction exists, in respect to suits for real property.

What is its jurisdiction in cases of treason?

The first law, that of the 4th of October, 1776, is purely a treason law, which vests in no particular tribunal a jurisdiction to try persons charged with this offence. The act of the 20th of September, 1777, fixes the punishment of treason. That of the 18th of April, 1778, points out the mode of trial, and, instead of proceeding by way of indictment, as at common law, the inquisition taken before a justice of the peace, is to be returned to the inferior court of common pleas for the county; where the trial, if any, is to take place, and final judgment is to be rendered. This law then, prescribes the mode of trial of an offence before defined, and points out the court where the trial is to take place. Every case of treason, arising under the former laws, is to be tried in this court, and in the prescribed form. In all such cases, the jurisdiction is general.

We come then to the act of the 11th of December, 1778, which makes some slight alteration in the form of proceedings, and

extends the doctrine of treason to persons and to acts not before comprehended in former laws. An act, not criminal by virtue of any pre-existing law, is now declared · to amount to treason. The jurisdiction of the court, however, remains as formerly, and cannot be said to be limited and restricted by extending the crime of treason to acts not before deemed criminal. There is, surely, a striking difference between a special delegation of power to try particular cases, and multiplying the offences which the same tribunal was before authorized to try. In the exercise of their power to decide what acts constitute treason under this law, the court has certainly erred, by declaring that to be treason, which, in point of law, is not treason. This is an error in judgment sufficient to have authorized a superior tribunal to reverse it. But it does not amount to the usurpation of a power to judge and to decide, not granted by the legislature. The power to judge in the case is general—the correctness of the judgment is another matter. The circuit courts of the United States, are vested with the power of trying criminal offences against the laws of the United States. We know what it is that constitutes treason, murder, perjury, and the like. Suppose, that the crime of treason were not defined by the constitution, and that congress should declare certain acts to amount to treason, murder, or perjury, which before were not offences against the law. Should the court, in any particular case, determine that to amount to treason, &c. which, under the new law, is not strictly within the definition, would the judgment be void? I think it certainly would not.

But, if this were the case of a judgment rendered by a court of limited jurisdiction, I should feel strongly inclined to think, that, upon a just and legal construction of the eleventh section, the lessor of the plaintiff is barred of her remedy against the purchaser. In that case, the only argument of any consequence must be founded on the words in that section, "or made void." It might be said, and has been strongly insisted upon, that this expression necessarily relates to a valid and subsisting judgment; because that which is already void, and never had an existence, cannot be made void. There are certainly very strong reasons for condemning this construction, as being too literal and rigid. If the legislature had used the word "declared," instead of "made," the construction contended for by the plaintiff's counsel could not have been supported; because, whether the remedy pursued by the injured party were by writ of error, motion to quash, or ejectment to recover the land, the ground of success must have been, that the judgment should be declared to be void. Now there seems to be strong reasons for believing, that

the legislature intended, in all cases, to protect the purchaser, and to substitute the state in his place. One reason is, that it could never have been intended to permit the party to escape from the provisions of this section, and thus to leave the other party unprotected by the mere form in which he might elect to proceed. If he had brought a writ of error, which was clearly one of his remedies, no doubt can exist but that he would have been within the provisions of this section, and the purchaser would have been safe under it. But he would never pursue this remedy, if, in another form, he could stride over the judgment, and recover in a collateral suit. Another reason is, that the forfeited property was, by this law, made liable to pay the debts of the attainted person to its full amount; and it would therefore be most unreasonable that, after the proceeds had been thus applied, the party should also recover his property from a bona-fide purchaser, for whose indemnity no provision whatever is made. If the arguments used by the plaintiff be true, to the extent in which they were expressed, I can imagine very few cases indeed, where the injured party would find it necessary to proceed by way of writ of error, and, consequently, this beneficial provision, so intended at least, for the purchaser, would be nearly inoperative. Upon the whole. I think the verdict ought to be for the defendant.

Verdict for the defendant.

NOTE.—One point, made by the defendant, was, that the plaintiff and the lessor of the plaintiff, being stated to be British subjects, the plaintiff was exposed to the objection of alienage. Washington, Circuit Justice, observed, that he recollected no case where an alien plaintiff had recovered in ejectment. He referred to the case of Dawson v. Godfrey [4 Cranch (8 U. S.) 321], where the supreme court decided against the plaintiff, on the ground of alienage. But in this case, the title did not accrue till 1786, after the treaty of peace. However, the court being against the plaintiff upon the merits, no further notice was taken of this objection. [From this judgment the plaintiff took the case to the supreme court on writ of error. The judgment was affirmed in an opinion by Chief Justice Marshall. 5 Cranch (9 U. S.) 173. The judgment rendered by the court of common pleas, while erroneous, yet was held not to be disregarded, because it was rendered by a duly-constituted court, in the form prescribed by law, and by persons authorized to find the facts. The act of 11th December, 1778, makes no alteration in the tribunal before which the offence of treason is to be tried. "The courts of the United States are all of limited jurisdiction, and their proceedings are erroneous, if the jurisdiction be not shown upon them." Judgments rendered in such cases may be reversed, but cannot be treated as absolute nullities.]

KEMP (STOCKWELL v.). See Case No. 13,-465.

KEMP, The GEORGE T. See Case No. 5,-341.